(C.D. 2471)

Hilo Rice Mill Co., Ltd. American Customs Brokerage Company et al. } v. United States

United States Customs Court, Third Division

(Decided July 6, 1964)

*Lawrence & Tuttle* (*Edward N. Glad* and *George R. Tuttle* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*James F. O'Hara* and *Herbert L. Warren*, trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: These two cases were incorporated for purposes of trial. In 59/19109, the protest is against liquidation of peanut crackers at the rate of 20 percent, claiming they are properly dutiable at the rate of 8½ percent under paragraph 733 as baked articles. Protest 59/23762 originally claimed duty at various rates under paragraph 933.

Inasmuch as the Tariff Act of 1930 does not contain any paragraph numbered 933, it may be questioned whether protest 59/23762 was properly filed, pursuant to section 514. However, defendant raised no objection when the presiding judge permitted amendment of the protest to add, as an alternative claim, the same claim as in protest 59/19109, namely, for duty at the rate of 8½ percent under paragraph 733 as a baked article. Plaintiffs have adduced no proofs and have presented no argument in support of classification other than under paragraph 733. The claim in protest 59/23762 for paragraph 933 classification is overruled.

The merchandise was classified in liquidation, under paragraph 1558, as an edible preparation for human consumption, not specially provided for.

In their brief, plaintiffs state that their contention is that "these crackers are more specifically provided for under the *eo nomine* provision for baked articles by whatever name known, whether or not

containing nuts, at 8½% under paragraph 733, as modified by T.D. 54108."

Modified paragraph 733 does not specially provide for "baked articles by whatever name known." Paragraph 733 provides, as defendant's brief more accurately states, for certain enumerated articles and for *similar* baked articles by whatever name known. The enumerated articles are biscuits, wafers, cake, and cakes. The first question before us, then, is whether this merchandise is, in the tariff sense, a biscuit, wafer, cake, or cakes; and, if it is not, then the second question is whether it is a baked article that is *similar* to a biscuit, wafer, cake, or cakes, even though it may be known by some other name.

The record includes testimony that was adduced on trial in Honolulu, and representative samples of the merchandise (exhibit 4). Interrogatories and responses, verified in Japan, were introduced; but since it appeared that the Commissioner by whom the interrogatories were propounded was shown not to be a person authorized to propound interrogatories under the laws of Japan, and was not even shown to be a person with the qualifications represented in the application for commission, the interrogatories were stricken from the record by order entered January 27, 1964.

Over 2 months later, on April 2, 1964, plaintiffs moved to have submission set aside and the cases placed on the calendar for a term in Honolulu on April 13, 1964, "for all purposes, and for such other relief as the ends of justice may require." Defendant's time to answer this motion would, under the rules, run to April 17, 1964, beyond the Honolulu term. However, on April 3, 1964, defendant filed its answer to plaintiff's motion. After deliberation, the motion was denied. We proceed now to decision on the record before us, which includes exhibits representative of the imported articles in litigation. (Parenthetically, it may be observed that even if the answers to the interrogatories had probative value, they are not such as to determine our decision.)

We accept as fact, as defendant concedes, that with some differences as to ingredients the so-called peanut crackers of both protests have been baked. Even if the hearsay evidence as to method of manufacture were accepted, and we are of opinion that, being hearsay, it is not acceptable, the product is described as consisting of a coating of dough, rolled around a peanut, then cooked in an oven for 20 minutes, and thereafter glazed with soy sauce. Examination of exhibit 4 substantially corroborates this composition.

If these so-called peanut crackers are an article that is enumerated in paragraph 733, or a baked article that is *similar* to one of the enumerated articles, it is immaterial that the product contains a nut,

or by what name it is known. Paragraph 733, on which plaintiffs rely, provides:

*Biscuits, wafers, cake, cakes,* and *similar baked articles,* and puddings, all the foregoing by whatever name known, whether or not containing chocolate, nuts, fruits, or confectionery of any kind. [Emphasis added.]

The duty rate under paragraph 733, in the 1930 act, was 30 percent; as modified, effective at the time of these importations, the rate had been reduced to 8½ percent (T.D. 54108), but without modification of the classification enumeration.

There is testimony as to various names by which the product is known, including "iso-peanuts" and "football crackers," as well as "peanut crackers." The name "football cracker" refers to the shape and brownish outer coating, which cause the product somewhat to resemble a football in miniature. There is testimony that these peanut crackers are eaten in Japan and in Hawaii, but not generally elsewhere in the United States. Sometimes they are eaten with tea, but usually with beer. Like other crackers, this one is eaten as a snack with beer. Mr. Tagashira testified that it is also used as a "beer chaser." (R. 19.)

We have been called upon many times to construe the language of paragraph 733, but never before with respect to these peanut crackers. The cases cited as precedent must, of course, be read in the light of the products that were before the court in each such case. Let us take up the several enumerations of paragraph 733, consulting the precedents, dictionary definitions, and other aids to the court in determining the common meaning of tariff terms.

*United States* v. *Dunlop & Ward,* 6 Ct. Cust. Appls. 278, a case decided in 1915, construed paragraphs 194 and 417 of the Tariff Act of 1913. The collector had classified shortbread under paragraph 194, which enumerated biscuits, bread, wafers, cakes, and other baked articles, by whatever name known, *containing* chocolate, nuts, fruit, or confectionery. Plaintiff claimed that shortbread was on the free list, under paragraph 417, which enumerated biscuits, bread, and wafers, not specially provided for; but it did not contain chocolate or nuts or fruit or confectionery.

The holding was that the paragraph 194 specification "containing chocolate, nuts, fruit, or confectionery" is exclusionary and that, since the shortbread did not contain any of these ingredients, it was not an article enumerated in paragraph 194.

As to paragraph 417, the court held that the shortbread was not a bread, in the tariff sense; that because of its thickness (half an inch), it could not be classed as a wafer, which is flat; that it was not cake; but that it was within the definition of biscuit. In reaching this result, our appeals court said:

From the definitions of "biscuit" it is apparent that in the United States the term is used to designate not only a soft, unsweetened bread, which is shortened with lard or butter and which is usually eaten hot, but also hard, dry, flat cakes made of flour and water or milk and sometimes shortened, sweetened, and flavored—that is to say, "biscuit," as the word is used in the United States, includes not only the raised soft bread biscuit, a product peculiar to the American kitchen, but also the unraised, dry breads, if they can be so called, formed into flat cakes, baked hard, and either plain, sweet, or fancy. The merchandise under consideration is made of flour, butter, and sugar, mixed, we assume, with either milk or water. It is baked hard in the form of a dry, flat cake. The merchandise is, we think, clearly distinguishable by its form, its consistency, and its composition from both cake and bread, as those terms are commonly understood, and its characteristics bring it within the definition of biscuit, which covers not only a species of bread, but also both sweetened and unsweetened crackers. [*United States* v. *Dunlop & Ward, supra*, at pages 280, 281.]

Accepting the *rationale* of that decision, we hold that these so-called peanut crackers, or football crackers, or iso-peanuts, do not come within the meaning of the tariff enumeration for wafers, cake, or cakes. But are they biscuits? We think not.

As is made clear in various lexicons, there is a special meaning in the United States for the word "biscuits." This is pointed out in the first and second meanings stated in Webster's New International Dictionary, second edition, 1956, as follows:

**biscuit** * * * **1.** A kind of unraised bread, plain, sweet, or fancy, formed into flat cakes, and baked hard;—commonly called *cracker* in the United States. * * * **2.** *U.S.* a A variety of quick bread made in a small shape from dough that has been rolled and cut or dropped, and that is raised in the baking by some leavening agent other than yeast; as, baking-powder *biscuits*. **b** A bread made from yeast dough that has been raised, kneaded, and cut into small shapes;—usually called *raised biscuit*. [Italics quoted.]

This product is not an unraised bread, formed into a *flat cake* and baked hard. It is not bread. It is not flat. Nor is it the sort of quick bread that, in the United States, is commonly known as biscuits.

The next question is whether these peanut crackers, although not biscuits, wafers, cake, or cakes, are *similar* to some one or another of those articles, so as to qualify for paragraph 733 classification. That they are baked articles, is agreed. The controversy is as to whether they are baked articles *similar* to biscuits, wafers, cake, or cakes.

While plaintiffs' brief asserts that these "peanut crackers are baked articles containing nothing other than nuts," it is evident (even apart from the hearsay evidence as to manufacture) that the nuts have been coated and baked. The fact that there are peanuts is not the critical issue, for nuts may or may not be an ingredient of a paragraph 733 article.

The issue litigated in *United States* v. *Renken & Yates Smith Corp.*, 24 CCPA 265, T.D. 48687, cited by plaintiffs, is different. There, the court held that icing on biscuits did not change their tariff classification as biscuits into confectionery.

In *Ansel W. Robison* v. *United States*, 4 Cust. Ct. 310, C.D. 349, also cited by plaintiffs, baked dog biscuit meal, broken up after baking, was held dutiable as a baked article similar to biscuits, since the only change was in form.

The difficulties of construing a tariff provision for articles *similar* to enumerated articles, have engaged the attention of the courts many times. It is too well established to require citation of authority, that the test of similarity in valuation and classification cases is not the same. This is a classification case.

The burden on the court is aptly stated in *Plant Products Corporation* v. *United States*, 44 CCPA 183, C.A.D. 658, where our appeals court considered a specification for "all products, by whatever name known, which are *similar* to any of the products provided for in this paragraph or in paragraph 1651. . . ." [Emphasis added.] Discussing the weight to be given to "similar" in that context, the court said:

> The quoted definitions set forth the common or ordinary meaning of the word "similar" which is to be applied in classification cases such as the instant one, but it is clear that they allow a wide range in interpretation. The only thing they establish with certainty is that similar articles must be alike in some respects and different in others. The degree may vary from "resembling in many respects" to being merely "somewhat like" or "like in quality, nature, degree, purpose, or other characteristics." It is evident, therefore, that no hard and fast rule can be laid down, but that the exact degree of likeness required to constitute similarity in any particular case must be a matter of opinion based on consideration of the particular circumstances involved. [P. 188.]

The degree of likeness asserted here by plaintiffs is that these crackers are used in the same manner as a biscuit, cracker, or pretzel. (Plaintiffs' brief, p. 7.)

We take this to mean that they are eaten as crackers, pretzels, and biscuits are eaten. Even if that be conceded, and we are not clear that on the record before us it should be, it would be only one element of the many elements to be considered in determining similarity of one product to another product.

In *United States* v. *Freitag & Sons, Inc., et al.*, 21 CCPA 500, T.D. 46961, considering whether imported buttons were "similar to pearl, shell, or agate buttons," the court said:

> While it would be very difficult to lay down a hard and fast definition of the word "similar" as used by Congress in the involved provision, and we do not intend to do so in this opinion, nevertheless we think that an imported button ordinarily should be regarded as similar to pearl or agate buttons, within the meaning of this paragraph, if the imported button so resembled the pearl or agate button that one could be easily substituted for the other in a commercial way. Color, shape, appearance, value, use, and probably many other things might be of importance in the consideration of this question. It may be urged that under the foregoing statement any button a garment manufacturer places upon a garment other than a pearl or agate button is a substitution of one for the

other, and that in such cases the buttons should be regarded as similar. It is clear to us that Congress had something more definite in mind than the thought thus expressed. It did not seek to impose the higher duty upon all imported buttons which could be used on garments, because all buttons could be used on garments, but it sought to impose the higher duty on such buttons as could be substituted for the particular purpose or use to which pearl or agate buttons were specially fitted and used. [P. 508.]

We, also, do not lay down a hard and fast rule. We are of opinion that plaintiffs have not shown that these peanut crackers, although they are baked articles, are similar to biscuits which, in *United States* v. *Dunlop & Ward, supra,* were held to be *either* soft, unsweetened, shortened bread, usually eaten hot, *or* hard, dry, flat cakes of those ingredients. Nor are they shown to be similar to wafers, cake, or cakes, the other articles enumerated in paragraph 733, nor to crackers or pretzels.

The protest is overruled. Judgment will be entered accordingly.