HILO RICE MILL CO., LTD., AMERICAN CUSTOMS BROKERAGE COMPANY, v. UNITED STATES (No. 5194)*

United States Court of Customs and Patent Appeals, July 1, 1965

Glad & Tuttle (Edward N. Glad, of counsel) for appellants.

John W. Douglas, Assistant Attorney General, Andrew P. Vance, Chief, Customs Section, James S. O'Kelly, for the United States.

[Oral argument April 6, 1965, by Mr. Glad and Mr. O'Kelly]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Jr., Associate Judges

MARTIN, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Third Division, 53 Cust. Ct. 47 (C.D. 2471), 99 Treas. Dec. No. 29 at 46, which overruled appellants' protest to the classification of Iso peanuts (peanut crackers) under paragraph 1558 of the Tariff Act of 1930 at the rate of 20 percent ad valorem. Two protests were incorporated for trial, Protest Nos. 59/19109–20445 and 59/23762–20459 as amended, claiming under paragraph 733 of the Act as modified by T.D. 54108, dutiable at the rate of 8½% ad valorem.

The testimony shows that the goods are an edible snack-type preparation eaten with a beverage, such as tea, or as a beer snack. The Iso peanuts are composed of a peanut coated with dough, such as rice dough, which is rolled around the peanut, oven-cooked for 20 minutes and thereafter glazed to a brownish color with soy sauce. From specimens of the goods in evidence it appears that the coating is on the order of thickness of the diameter of the peanut. Imported from Japan, the goods are known as "Japanese Rice Crackers," "peanut crackers," "Iso Peanuts," or "Nut Ball Arare" and "football crackers" in reference to their shape. The goods were invoiced as "rice crackers" and "Iso peanuts."

Paragraph 1558, under which the merchandise was classified by the collector, reads as follows:

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty

---

of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Appellant claims the goods are properly dutiable under paragraph 733, as modified by T.D. 54108, which reads as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rates of Duty C |
|---|---|---|
| 733 | Biscuits, wafers, cake, cakes and similar baked articles, and puddings, all the foregoing by whatever name known, whether or not containing chocolate, nuts, fruits, or confectionery of any kind. | 8½% ad val. |

The duty under paragraph 733 of the 1930 Act was 30 percent, but as modified by T.D. 54108 and effective at the time of these importations had been reduced to 8½ percent. T.D. 54108 did not, however, modify the classification enumeration.

While paragraph 733 presents two questions with respect to classification, first, whether the merchandise is a biscuit, wafer, cake or cakes, and second, whether the merchandise is "similar" to any of those articles, appellants do not now contend, as they did before the lower court, that the goods fall within any of the enumerated categories. Thus we are left with but the single question of whether the goods are "similar baked articles," and, as appellee and the lower court point out, this question is not one of classification by similitude. There is also no issue that the goods are not baked articles, or that the presence of the peanut is the critical issue, since nuts may or may not be an ingredient under paragraph 733, as modified.

As a starting point it is necessary to indicate the nature of the enumerated articles of paragraph 733 before we can validly determine what the range of a "similar baked article" is and whether the goods here come within that range.

In *United States* v. *Dunlop & Ward*, 6 Ct. Cust. Appls. 278 (1915), the court construed paragraphs 194 and 417 of the tariff act of 1913. Plaintiff had protested that shortbread was on the free list under paragraph 417, which enumerated biscuits, bread, and wafers not specially provided for. For reasons unimportant here the court held that paragraph 194, under which the goods had been classified, was exclusionary of shortbreads. The court held that the shortbread was not a bread for tariff purposes, that it could not be classed as a wafer because it is too thick in view of the "[Funk & Wagnalls] Standard Dictionary" definition of a wafer as "(2) A very thin light biscuit, when sweetened called sugar wafer," and that it was not cake. In

holding that the shortbread was within the definition of "biscuit" the court stated (6 Ct. Cust. Appls. at 280–281) :

A biscuit is defined to be—

1. (U.S.) a small, soft cake, generally shortened with lard or butter and unsweetened ; often eaten hot.

2. A cracker ; so called in England. In the United States this use is commonly restricted to fancy biscuits or sweet crackers.—*Standard Dictionary* [Funk & Wagnalls].

1. A kind of hard, dry bread, consisting of flour, water or milk, and salt, baked in thin flat cakes. The name is also extended to similar articles very variously made and flavored.

2. A small, round, soft cake made from dough raised with yeast or soda, sometimes shortened with lard, etc. * * * Naples biscuits, lady's-fingers.— *Century Dictionary and Cyclopedia.*

1. A kind of unraised bread, of many varieties, plain, sweet, or fancy, formed into flat cakes, and baked hard ; as, ship biscuit.

2. A small loaf or cake of bread, raised and shortened or made light with soda or baking powder. Usually a number are baked in the same pan, forming a sheet or card.—*Webster's Dictionary.*

From the definitions of "biscuit" it is apparent that in the United States the term is used to designate not only a soft, unsweetened bread, which is shortened with lard or butter and which is usually eaten hot, but also hard, dry, flat cakes made of flour and water or milk and sometimes shortened, sweetened, and flavored—that is to say, "biscuit," as the word is used in the United States, includes not only the raised soft bread biscuit, a product peculiar to the American kitchen, but also the unraised, dry breads, if they can be so called, formed into flat cakes, baked hard, and either plain, sweet, or fancy. The merchandise under consideration is made of flour, butter, and sugar, mixed, we assume, with either milk or water. It is baked hard in the form of a dry, flat cake. The merchandise is, we think, clearly distinguishable by its form, its consistency, and its composition from both cake and bread, as those terms are commonly understood, and its characteristics bring it within the definition of biscuit, which covers not only a species of bread, but also both sweetened and unsweetened crackers.

We note here that the 1932 edition of Webster's defines biscuit in almost identical terms, omitting the phrase "of many varieties," but adding the notation that biscuit is "—commonly called *cracker* in the United States" to the first definition, and omits the reference to the number baked in a pan in the second definition. Similarly Funk & Wagnalls New Standard Dictionary (1931) defines biscuit in identical terms to those noted by the *Dunlop* court as extant in 1915. Thus it is clear that the definition of biscuit has been standard throughout the period from the *Dunlop case* in 1915 through 1932, which includes that of the passage of the 1930 Act. This convinces us that citations of dictionaries published in 1931 and 1932 in this instance are relevant to the issue.

The above definitions and decision of the court refer us to "crackers," a type of biscuit, apparently distinguishable primarily by its thin

form. Webster's New International Dictionary (1932) defines cracker as follows:

Cracker * * *

8. A thin, dry biscuit, often hard or crisp; as, a Boston *cracker;* a Graham *cracker;* a soda *cracker;* an oyster *cracker.* *Chiefly* U.S.

Funk & Wagnalls New Standard Dictionary (1931) defines cracker as:

2. [Am.] A thin brittle biscuit; as, an oyster-*cracker.*

However, biscuits are not limited to the two forms, the standard "small soft cake" and the "thin brittle" cracker or "saltine" type, since a pretzel, as defined by those sources respectively, is indicated to be a type of biscuit:

Pretzel * * * A kind of brittle German biscuit in the form of a twisted ring, salted on the surface. [Webster's]

Pretzel, A biscuit made from wheaten flour by twisting a rolled piece of dough into a knot-like form, dipping it in boiling lye made from straw ashes, and sprinkling it with salt, and baking it crisp. [Funk & Wagnalls]

Thus it is apparent that "biscuit" is a generic term and is not limited to a particular form of the baked articles. This view is consistent with *Ansel W. Robison* v. *United States*, 4 Cust. Ct. 310, C.D. 349, in which baked dog biscuit meal, broken up after baking, was held dutiable as a baked article similar to biscuits, since the only change was that of form. See *F.W. Myers & Co.* v. *United States*, 47 Treas. Dec. 306, T.D. 40746—G.A. 8954.

The test of similarity seems most appropriately to have been stated in *Plant Products Corp.* v. *United States*, 44 CCPA 183, 188, C.A.D. 658:

The quoted definitions set forth the common or ordinary meaning of the word "similar" which is to be applied in classification cases such as the instant one, but it is clear that they allow a wide range in interpretation. The only thing they establish with certainty is that similar articles must be alike in some respects and different in others. The degree may vary from "resembling in many respects" to being merely "somewhat like" or "like in quality, nature, degree, purpose, or other characteristics." It is evident, therefore, that no hard and fast rule can be laid down, but that the exact degree of likeness required to constitute similarity in any particular case must be a matter of opinion based on consideration of the particular circumstances involved.

See also *United States* v. *Freitag & Sons, Inc.*, 21 CCPA 500, T.D. 46961.

Within that latitude of similarity, we think the instant merchandise to be similar to a biscuit within the meaning of the definitions above quoted as showing the generic scope of that term. Both the lower court and the Government err in considering that there are only two forms of biscuit. The court stated:

We, also, do not lay down a hard and fast rule. We are of opinion that plaintiffs have not shown that these peanut crackers, although they are baked

articles, are similar to biscuits, which in *United States* v. *Dunlop & Ward, supra,* were held to be *either* soft, unsweetened, shortened bread, usually eaten hot, *or* hard, dry, flat cakes of those ingredients. * * *

The Government states:

> In sum, the above judicial and lexicographic authorities define *cake* as being soft and sweet, whereas *cakes* are flat and thin. *Wafers* are also thin, and *biscuits* are either soft raised bread or unraised hard flat bread.

We think the texture and use, not merely as food but as the specific food use, is quite similar to a pretzel, which is defined as a biscuit. Clearly also the quality is the same, and neither the difference of form nor the inclusion of a peanut are controlling. We think these are sufficient characteristics to warrant the goods here to be properly classified as "similar" to a biscuit, enumerated in paragraph 733.

It is to be noted that paragraph 194 of the act of 1913 provided for "biscuits, bread, wafers, cakes and *other* baked articles * * * [Emphasis ours]" if they contained chocolate, nuts, fruit or confectionary of any kind. We think it evident that the goods would have been included in that provision.

The "Summary of Tariff Information, 1921," indicates that paragraph 733 of the Act of 1922 combined thereinto several paragraphs of prior acts including paragraph 194, stating (at p. 709):

> *Important changes in classification.*—This paragraph combines three paragraphs of the act of 1913, paragraph 194 covering biscuits, wafers, cakes, etc., when containing chocolate, nuts, and fruit, and paragraphs 417 and 640 of the free list, covering biscuits, bread, and wafers, not specially provided for, and wafers, unleavened. Ordinary commercial bread, however, is kept on the free list (par. 1522.). (italics quoted)

The language of paragraph 733 of the Tariff Act of 1922 is identical to that under the Act of 1930, under which the goods herein are sought to be classified. As noted above, the modification of the Act of 1930, T.D. 54108, did not change the classification enumeration.

It does not clearly appear that the change from "other baked articles" to "similar baked articles" made the Act less comprehensive with regard to bakery products, or to the types of biscuits included thereunder. See *United States* v. *Renken & Yates Smith Corp.*, 24 CCPA 265, 269, T.D. 48687; *F. W. Myers & Co.* v. *United States*, 47 Treas. Dec. 306, T.D. 40746–G.A. 8954, and *Renken & Yates Smith Corp.* v. *United States*, 63 Treas. Dec. 79, 82, T.D. 46110.

Further, the "intent" of GATT negotiators, as expressed during the above noted modification of duty rates, seems consistent with that view. The "Summaries of Tariff Information" (1948) Vol. 7, Part 3, p. 99, states:

## BISCUITS AND WAFERS, CAKES, PUDDINGS, AND SIMILAR BAKED ARTICLES

### (Par. 733)

#### Comment

This summary covers virtually all bakery products except bread and yeast-leavened biscuits. The term "biscuits and wafers" applies to what are customarily known as "unsweetened *crackers* and sweet cookies." * * * Total production [in the United States] in 1939 of items covered by this summary was distributed as follows: Crackers, biscuits, sponge goods, sweet goods, and machine-made cookies, 36 percent; cakes, 32 percent; pies, 13 percent; doughnuts, crullers, and other fried cakes, 10 percent; hand-made cookies, 4 percent: *pretzels*, 1 percent; and other pastries, 4 percent. [Emphasis ours.]

For the foregoing reasons we *reverse* the judgment of the Customs Court.